1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9        FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   DEBRA LYNN ARNOLD                     No.  2:12-cv-1936 KJN
12              Plaintiff,
13        v.                               ORDER
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
              Defendant.
16

17        Plaintiff, proceeding pro se, seeks judicial review of a final decision of the Commissioner

18   of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance

19   Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI,

20   respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff

21   principally contends that the Commissioner erred by finding that plaintiff was not disabled from

22   February 7, 2008, the alleged disability onset date, through the date of the final administrative

23   decision.  (ECF No. 17.)  The Commissioner filed an opposition to plaintiff's motion and a cross-

24   motion for summary judgment.  (ECF No. 19.)  Thereafter, the Commissioner filed a request for

25   leave to file a surreply.  (ECF No. 20.)  In this request, the Commissioner states that she was

26

27   _____

     [1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and
     both parties voluntarily consented to proceed before a United States Magistrate Judge for all
28   purposes.  (ECF Nos. 7, 18.)

                                       1

served with plaintiff's reply, accompanied by "new evidence" (i.e., medical records from Kaiser Permanente, San Joaquin County Behavioral Health Services, and San Joaquin General Hospital, along with miscellaneous other documents) on or about June 21, 2013. (Id.)  However, plaintiff never filed the above-mentioned reply and alleged "new evidence" with the court.   Accordingly, on July 23, 2013, the court "grant[ed] plaintiff 28 days to file with the court the reply purportedly served on the Commissioner, accompanied by any 'new evidence.'"  (ECF No. 21 at 2.)  On August 7, 2013, plaintiff filed a reply brief, which did not include any of the above-mentioned "new evidence" or any other medical records.  (ECF No. 22.)  On September 24, 2013, plaintiff filed a "surreply" in support of her motion for summary judgment, which included what appears to be the above-mentioned "new evidence."[2]  (ECF No. 25.)  On September 27, 2013, the Commissioner filed a request that the court consider and accept her filing at ECF No. 20-2 as her response to plaintiff's "surreply."[3]  (ECF No. 26.)  For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.      BACKGROUND

Plaintiff was born on June 5, 1965, completed the eleventh grade, holds a cosmetology license, formerly worked as a hair stylist, retail stocker, film developer, and bus driver, and co-owned a restaurant with her ex-husband where she performed a number of jobs related to the

---

[2] It appears that plaintiff filed this additional reply with the mistaken understanding that the court's August 28, 2013 order granting the Commissioner's motion for a fourteen-day extension of time to file a surreply in accordance with the court's July 24, 2013 order (ECF No. 21) also granted plaintiff additional time to file an additional reply with the "new evidence" attached. (See ECF No. 25 at 1.)  Regardless of this confusion, plaintiff did not file her "surreply" until September 24, 2013, after the September 19, 2013 deadline the August 28, 2013 order set for the Commissioner to file her surreply.  Therefore, even if the court were to have given plaintiff additional time to file yet another reply, plaintiff still filed her "surreply" after the deadline for doing so.  Accordingly, the undersigned will disregard plaintiff's "surreply" on grounds that it is both procedurally improper and untimely.

[3] Because the court disregards plaintiff's surreply, the court denies the Commissioner's request as moot.

2

1   management and operation of the restaurant.[4]  (Adminsitrative Transcript ("AT") 51-56, 157-58,

2   165, 178.)  On July 25, 2008, plaintiff applied for DIB and SSI, alleging that she was unable to

3   work as of February 7, 2008, primarily due to pain in her back, legs, feet, arms and hands, and

4   depression and Post Traumatic Stress Disorder ("PTSD").  (AT 157-71, 182.)  On October 1,

5   2008, the Commissioner determined that plaintiff was not disabled.  (AT 99.)  Upon plaintiff's

6   request for reconsideration, the determination was affirmed on March 20, 2009.  (AT 105-06.)

7   Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took

8   place on February 8, 2010, and at which plaintiff (represented by counsel) and a vocational expert

9   ("VE") testified.  (AT 21, 47-91, 121-23.)

10      In a decision dated June 25, 2010, the ALJ determined that plaintiff had not been under a

11   disability, as defined in the Act, from February 7, 2008, plaintiff's alleged disability onset date,

12   through the date of the ALJ's decision.  (AT 21-29.)  The ALJ's decision became the final

13   decision of the Commissioner when the Appeals Council denied plaintiff's request for review on

14   June 7, 2012.  (AT 1.) Thereafter, plaintiff filed this action in federal district court on July 24,

15   2012, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

16      II.      ISSUES PRESENTED

17      Based on a liberal construction of plaintiff's motion for summary judgment, the

18   undersigned finds that plaintiff asserts the following issues:  (1) whether the ALJ erred at step

19   three in determining that plaintiff's impairments did not meet or equal a disability listing under 20

20   C.F.R., Pt. 404, Subpt. P, App. 1; (2) whether the ALJ erred in assessing plaintiff's residual

21   functional capacity ("RFC"); (3) whether the ALJ made an improper credibility determination

22   with respect to plaintiff's testimony; and (4) whether plaintiff's submission of additional medical

23   evidence warrants remand.

24   ////

25   ////

26   _____

27   [4] Because the parties are familiar with the factual background of this case, including plaintiff's
     medical and mental health history, the court does not exhaustively relate those facts in this order.
     The facts related to plaintiff's impairments and treatment will be addressed insofar as they are

28   relevant to the issues presented by the parties' respective motions.

1    III.    LEGAL STANDARD

2         The court reviews the Commissioner's decision to determine whether (1) it is based on

3    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

4    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

5    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

6    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

7    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

8    Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is

9    responsible for determining credibility, resolving conflicts in medical testimony, and resolving

10   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

11   court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

12   interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13   IV.    DISCUSSION

14        A.  Summary of the ALJ's Findings

15        The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard

16   five-step analytical framework.[5]  At the first step, the ALJ concluded that plaintiff had not

17   _____

[5] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
18   Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled
     persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as
19   an "inability to engage in any substantial gainful activity" due to "a medically determinable
     physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel
20   five-step sequential evaluation governs eligibility for benefits under both programs.  See 20
     C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137
21   (1987).  The following summarizes the sequential evaluation:

22        Step one: Is the claimant engaging in substantial gainful activity?  If so, the
23        claimant is found not disabled.  If not, proceed to step two.

24        Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step
         three.  If not, then a finding of not disabled is appropriate.
25

26        Step three: Does the claimant's impairment or combination of impairments meet or
         equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
27        claimant is automatically determined disabled.  If not, proceed to step four.

28        Step four:  Is the claimant capable of performing his past relevant work?  If so, the

4

engaged in substantial gainful activity since February 7, 2008, the alleged onset date.  (AT 23.)

At step two, the ALJ determined that plaintiff had the following severe impairments:

"degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine;

depressive disorder; and post-traumatic stress disorder."  (Id.)  However, at step three, the ALJ

determined that plaintiff did not have an impairment or combination of impairments that meet or

medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 24.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity: the claimant can lift and carry up to 10 pounds occasionally and up to five pounds frequently; can stand and/or walk for two hours out of an eight-hour workday; and can sit for six hours out of an eight-hour workday.  The claimant can push and/or pull up to 10 pounds frequently and up to five pounds occasionally.  The claimant has no impairment of vision or speech.  The claimant is moderately limited in her ability to reach.[6]  The claimant can perform manipulate [sic] her hands without limitation.  The claimant has no environmental limitation.  The claimant is slightly limited in her ability to maintain attention and concentration.  The claimant is slightly limited in her ability to understand and remember.  The claimant is unlimited in her ability to tolerate contact with the public.  The claimant can tolerate occasional supervision.  The claimant's residual functional capacity is consistent with a narrowed range of sedentary exertion.

(Id.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work.

(AT 27.)  Finally, at step five, the ALJ determined, in reliance on the VE's testimony, that

---

> claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

[6] "Moderately limited" is defined as the ability to perform the activity for three hours or less out of an eight-hour workday.

1   considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in

2   significant numbers in the national economy that plaintiff could perform.  (AT 28.)  Specifically,

3   the ALJ found that plaintiff would be able to perform the following representative occupations:

4   (1) information clerk, a sedentary work occupation with a specific vocational preparation ("SVP")

5   of 2, and with 11,000 jobs in California; (2) office clerk, sedentary work occupation with a SVP

6   of 2, and with 19,000 jobs in California; and (3) assembler, sedentary work occupation with a

7   SVP of 2, and with 4,000 jobs in California.  (AT 28-29.)

8        Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined

9   in the Act, from February 7, 2008, plaintiff's alleged disability onset date, through the date of the

10   ALJ's June 25, 2010 decision.  (AT 29.)

11        B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

12             1.  Whether the ALJ Erred at Step Three in Determining That Plaintiff's

13                  Impairments Did Not Meet or Equal a Disability Listing

14        At step three, the ALJ determines whether "a claimant's impairment meets or equals an

15   impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]."  Tackett v. Apfel, 180 F.3d

16   1094, 1099 (9th Cir. 1999).  The Listing of Impairments describes specific impairments of each

17   of the major body systems "which are considered severe enough to prevent a person from doing

18   any gainful activity."  Id. (citing 20 C.F.R. § 404.1525).  If a claimant meets or equals a listed

19   impairment he or she will be found disabled at this step without further inquiry.  Tackett, 180

20   F.3d at 1099 (citing 20 C.F.R. § 404.1520(d)).

21        A claimant bears the burden of proving that his or her impairments satisfy all the criteria

22   of a particular listing.  Tackett, 180 F.3d at 1099 ("[Claimant] had to establish that he [or she] met

23   or equaled each of the following characteristics of a listing.").  "For a claimant to show that his

24   [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.  An

25   impairment that manifests only some of those criteria, no matter how severely, does not qualify."

26   Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

27        In the present case, the ALJ concluded at step three that plaintiff "does not have an

28   impairment or combination of impairments that meets or equals one of the listed impairments in

6

20 CFR Part 404, Subpart P, Appendix 1." (AT 24.)  In coming to this conclusion, the ALJ stated that he had "considered all sections of the Listing of Impairments, including, in particular, those sections pertaining to musculoskeletal impairments and mental impairments." (Id.)  Plaintiff argues that the ALJ erred in his conclusion that plaintiff's impairments do not meet a listing. When plaintiff's motion for summary judgment is construed liberally, it would appear that plaintiff argues in particular that the ALJ should have determined that her PTSD, Depression, and degenerative disc disease of the cervical and lumbar spine either individually or in combination met or equaled a listed impairment.  For the reasons stated below, plaintiff's argument is without merit.

a.  Mental Impairments: Depression and PTSD

In order to show that plaintiff's depression met listing-level severity, plaintiff must show that her impairment satisfied the criteria of Listing 12.04 (Affective Disorders).[7]  Listing 12.04

---

[7] Listing 12.04 states:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or

requires a claimant to prove that his or her medical impairments, whether singly or in

combination, meet the criteria of both Paragraphs A and B or, alternatively, meet the criteria of

Paragraph C.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

In order to show that plaintiff's PTSD met listing-level severity, plaintiff must show that

her impairment satisfied the criteria of Listing 12.06 (Anxiety Related Disorders).[8]  Listing 12.06

---

e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences
which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full
symptomatic picture of both manic and depressive syndromes (and currently
characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years'
duration that has caused more than a minimal limitation of ability to do basic work
activities, with symptoms or signs currently attenuated by medication or
psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that
even a minimal increase in mental demands or change in the environment would
be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly
supportive living arrangement, with an indication of continued need for such an
arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

[8] Listing 12.06 states:

12.06 Anxiety Related Disorders: In these disorders anxiety is either the
predominant disturbance or it is experienced if the individual attempts to master
symptoms; for example, confronting the dreaded object or situation in a phobic
disorder or resisting the obsessions or compulsions in obsessive compulsive
disorders.

requires a claimant to prove that his or her medical impairments, whether singly or in

combination, meet the criteria of both Paragraphs A and B or, alternatively, meet the criteria of

both Paragraphs A and C.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.

Here, the ALJ made the following determination with respect to plaintiff's mental

impairments:

> The undersigned finds that, considering the claimant's feelings of depression and
> anxiety, the claimant has slight limitations in understanding, remember [sic], and
> maintaining attention and concentration.  The claimant's depression and anxiety
> also limits her to only occasional contact with a supervisor, but her symptoms are

> The required level of severity for these disorders is met when the requirements in
> both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> A. Medically documented findings of at least one of the following:
> 1. Generalized persistent anxiety accompanied by three out of four of the
> following signs or symptoms:
> a. Motor tension; or
> b. Autonomic hyperactivity; or
> c. Apprehensive expectation; or
> d. Vigilance and scanning; or
> 2. A persistent irrational fear of a specific object, activity, or situation which
> results in a compelling desire to avoid the dreaded object, activity, or situation; or
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of
> intense apprehension, fear, terror and sense of impending doom occurring on the
> average of at least once a week; or
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a
> source of marked distress;
>
> AND
>
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.
>
> OR
>
> C. Resulting in complete inability to function independently outside the area of
> one's home.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.

not so severe as to limit her ability to tolerate public contact. As to the "B" criteria under section 12.00, the undersigned finds that claimant has mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild-to-moderate difficulties in maintaining concentration, persistence, and pace. The claimant has never experienced repeated episodes of decompensation, each of extended duration.

(AT 27.) The medical evidence on record generally reflects the findings in the ALJ's above opinion and indicates that plaintiff's mental impairments were not sufficiently severe to require the ALJ to find that they met the listing criteria under either 12.04 or 12.06.

While plaintiff's medical records during the period at issue note that plaintiff was suffering from both depression and PTSD, they show that the severity of these conditions were not sufficient to meet a listing. Most notably, Kim Morris, a psychologist who conducted a consultative examination of plaintiff on March 14, 2009, noted plaintiff's depression and PTSD and reviewed these conditions' severity under the standards articulated by Listings 12.04 and 12.06. (AT 532-45.) During this examination, Morris found that plaintiff did not meet the listing criteria under subsection B for either section 12.04 or section 12.06. (AT 540.) In particular, Morris noted that plaintiff's depression and PTSD caused only the following restrictions and difficulties: mild restriction on activities of activities of daily living, mild difficulties in maintaining social function, and moderate difficulties in maintaining concentration, persistence, or pace. (Id.) These findings all fell short of the requirements under subsection B of both section 12.04 and section 12.06 that the restrictions and complications caused by plaintiff's mental impairments be at least "marked" in nature. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. Furthermore, Morris found that plaintiff had suffered no episodes of decompensation of extended duration. (AT 540.) In addition, Morris determined, based on plaintiff's examination and prior medical records, that the medical evidence did not establish the presence of any of the criteria under subsection C of section 12.04 or subsection C of section 12.06. (AT 541.)

Plaintiff's other medical records from the relevant period support the determinations of both Morris and the ALJ that plaintiff's mental impairments did not meet the criteria for either of these two listings. For instance, Dr. Wong, a psychiatrist who conducted a consultative examination of plaintiff on February 23, 2009, opined that while plaintiff had "major depression"

10

and PTSD that were both worsening, these two impairments only caused mild-to-moderate limitations with regard to workplace activities.  (AT 531 ("[H]er initiative in her drive and her mental organization is moderately diminished from time to time.  Her ability to interact with coworkers in the public is mildly diminished by her depressed mood . . . . Globally her ability to maintain an adequate pace and level of endurance over an eight-hour workday is felt to be moderately diminished . . . . Her ability to relate to a supervisor is mild-to-moderately diminished . . . .").  The other medical evidence from the relevant time period also reflects that, at most, plaintiff's mental impairments caused mild-to-moderate restrictions.  (See AT 599-605.)

Accordingly, the substantial evidence in the record supports the ALJ's determination that plaintiff's depression and PTSD were not sufficiently severe to meet the criteria of listing 12.04 or 12.06.  Therefore, plaintiff's argument that the ALJ erred in this conclusion is without merit.

b.  Physical Impairment: Degenerative Disc Disease

In order to show that plaintiff's degenerative disc disease of the cervical and lumbar spine met listing-level severity, plaintiff must show that her impairment satisfied the criteria of Listing 1.04 (Disorders of the Spine).[9]  Here, plaintiff's medical records from the time period in question

_____

[9] Listing 1.04 states:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

1    support the ALJ's determination that plaintiff's degenerative disc disease was not severe enough

2    to meet Paragraphs A or B or C of this listing.

3        Dr. Baker conducted a physical examination of plaintiff on August 28, 2009.  Dr. Baker's

4    examination notes state that plaintiff's "neurologic examination discloses diminished sensation in

5    the bilateral L5 distribution, but the motor examination does not clearly support the existence of

6    radiculopathy."  (AT 567.)  Dr. Baker opined that while plaintiff would have chronic problems

7    with her back, those problems could be managed with conservative treatment such as physical

8    therapy and infrequent epidural steroid injections to restore functionality.  (AT 577.)

9        An MRI of plaintiff's cervical spine, which was also taken on August 28, 2009, revealed a

10    "[m]inimal posterior annular bulge from C3-4 through 6-7 which minimally effaces the thecal sac

11    without encroaching on the cord," and "[n]o additional remarkable spondylitic change, focal

12    abnormality or evidence of acquired neuropathic encroachment."  (AT 579.)  Dr. Dietrich

13    reviewed the MRI of plaintiff's spine on the same day and concluded that the annular bulge

14    "[p]roduces mild to moderate narrowing of the right auxillary [sic] recess which may abut the

15    right L5 nerve root, but without definitive neuropathic encroachment" and that the "left auxillary

16    [sic] recess and central canal are mildly narrow without nerve root impingement."  (AT 580.)

17        Neither of these examinations, or the rest of medical evidence in the record, reveal that

18    plaintiff was suffering from a compromised nerve root, as is required under Listing 1.04.

19    Similarly, neither of these opinions or the rest of the record indicate that plaintiff suffered from

20    any of the conditions listed in any of the A, B, or C criteria set out in Listing 1.04.  Accordingly,

21    the ALJ also did not err in determining that plaintiff's physical impairments were not of a listing-

22    level severity.

23              2.    Whether the ALJ Erred in Assessing Plaintiff's RFC

24        In her motion for summary judgment, plaintiff argues that during her hearing with the

25    ALJ, the ALJ stated that "he did not want to hear what [plaintiff] can't do but what [she] could

26    do."  (Pl.'s Mot. for Summ. J. at 2.)  However, the ALJ did not err in making this statement

27

28    20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

1    regarding plaintiff's capabilities.  In fact, the relevant regulations required the ALJ to address

2    plaintiff's RFC under this standard.  20 C.F.R. § 404.1545 ("Your residual functional capacity is

3    the most you can still do despite your limitations.").  Furthermore, a review of the medical

4    evidence in the record reveals that the ALJ properly assessed plaintiff's RFC.

5           In arriving at the RFC determination, the ALJ considered and assessed the weight of all

6    the medical evidence in the record.  In particular, the ALJ considered the functional assessments

7    opined by the medical doctors and psychologists who either examined plaintiff or reviewed

8    plaintiff's medical records.  For the reasons discussed below, the ALJ properly assessed and

9    weighed these medical opinions in arriving at his RCF assessment.

10          The weight given to medical opinions depends in part on whether they are proffered by

11   treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,

12   1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more

13   weight is given to the opinion of a treating professional, who has a greater opportunity to know

14   and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.

15   1996).

16          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

17   considering its source, the court considers whether (1) contradictory opinions are in the record;

18   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

19   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

20   F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be

21   rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

22   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

23   examining professional's opinion (supported by different independent clinical findings), the ALJ

24   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

25   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

26   weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152, 1157 (9th

27   Cir. 2001), except that the ALJ in any event need not give it any weight if it is conclusory and

28   supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)

1   (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881

2   F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient

3   to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

4        In arriving at his RFC assessment, the ALJ addressed the medical opinions in the record

5   concerning plaintiff's physical impairments.  In particular, the ALJ considered the opinions of Dr.

6   Baker, a treating physician who examined plaintiff on August 29, 2009, in connection with a prior

7   worker's compensation claim, and Dr. Pham, a consulting physician who reviewed plaintiff's

8   medical records on September 17, 2008, and made an assessment of plaintiff's physical RFC.

9        After considering the assessments of these two doctors, the ALJ made the following

10   determination:

11
12       [Dr. Baker's and Dr. Pham's] assessments are consistent with a narrowed
       range of light exertion.  The physical residual functional capacity assigned herein
       is generally more generous to the claimant than that of either Dr. Baker and Dr.
13   Pham.  However, the undersigned cannot adopt the postural limitations assigned
       by Dr. Baker and Dr. Pham, as neither set of limitations is supported by the
14   evidence of record.  However, the undersigned has given consideration to the
       claimant's radicular symptoms in assigning moderate limitations in her ability to
15   reach.

16

17   (AT 26.)  While the ALJ generally relied on these two opinions in forming his RFC assessment

18   regarding plaintiff's physical capabilities, which was generally even more favorable to plaintiff

19   than the two doctors' overall RFC findings that plaintiff had mild-to-moderate physical

20   limitations, he still rejected the postural limitations opined by these two doctors because the

21   evidence in the record did not support such findings.  The ALJ's rejection of their opinions with

22   respect to plaintiff's postural limitations on the basis that the evidence in the record supported

23   neither set of limitations was legally sufficient.  See Tonapetyan v. Astrue, 242 F.3d 1144, 1149

24   (9th Cir. 2001) (upholding ALJ's rejection of doctor's opinion that was unsupported by the

25   objective medical evidence in the record).  For example, Dr. Baker noted within his own

26   examination notes regarding the motor and sensory diagnostics he conducted on plaintiff that

27   plaintiff did not suffer from spinal radiculopathy and that her back problems could be managed

28   with conservative treatment, but still opined that plaintiff's impairment limited her from engaging

1  in repetitive bending, stooping, twisting, or forceful pushing or pulling.  (AT 576, 578.)

2  Similarly, Dr. Pham opined that plaintiff could only occasionally engage in climbing, stooping,

3  kneeling, crouching, or crawling; however, Dr. Pham did not conduct an independent

4  examination of plaintiff and even notes in the evaluation that plaintiff's MRI showed signs of

5  only mild degenerative disc disease and that plaintiff's treatment for this condition was

6  conservative.  (AT 413, 415.)  Accordingly, the ALJ gave legitimate and sufficiently supported

7  reasons for assessing plaintiff's RFC with respect to her physical capabilities.

8       The ALJ also specifically addressed the medical opinions concerning plaintiff's mental

9  impairments in arriving at his final RFC assessment.  In particular, he addressed and assigned

10  evidentiary weight to the opinions of Dr. Wong, a psychiatrist who performed a consultative

11  examination of plaintiff in February 2009, Dr. Kalman, a psychiatrist who examined plaintiff in

12  January 2010, and Dr. Morris, a psychological consultant who reviewed plaintiff's records and

13  made an assessment of plaintiff's mental RFC on March 14, 2009.  The ALJ assigned "little

14  evidentiary weight" to each opinion.

15       The ALJ based his finding of little weight with respect to Dr. Wong's opinion on the

16  reasoning that Dr. Wong's opinion that plaintiff's mental impairments caused her mild-to-

17  moderate limitations was not supported by Dr. Wong's own clinical findings.  Likewise, the ALJ

18  found that Dr. Kalman's findings regarding plaintiff's limitations were not supported by the

19  doctor's own examination.  This was a legitimate reason for rejecting both opinions, see

20  Tommasetti, 533 F.3d at 1041 (holding that the ALJ properly rejected a treating physician's

21  opinion based on inconsistencies between the doctor's medical records and the doctor's opinion

22  of the claimant's limitations), and a review of these doctors' respective records and opinions

23  supports the ALJ's reasoning.  For instance, Dr. Wong opined that plaintiff's mental organization

24  was moderately diminished despite the fact that his own examination findings that her attention

25  was "good," her ability to concentrate was "fair," and her "memory functioning [was] globally

26  intact."  (AT 530.)  A review of Dr.Kalman's examination notes and opinion with respect to

27  plaintiff's limitations reveals similar inconsistencies.  (See AT 599-605 (finding mild-to-moderate

28  mental functional restrictions despite examination notes showing no limitations).)  The ALJ

1   further reasoned that little weight should be assigned to these two opinions because both doctors

2   based their opinions on a single psychiatric examination of plaintiff.  This was also a valid reason

3   for assigning little weight to these two opinions.   See Turner v. Comm'r of Social Security, 613

4   F.3d 1217, 1223 (9th Cir. 2010) (finding the ALJ's decision to reject an examining doctor's

5   opinion on the basis that the doctor had "not had any previous interaction with the claimant" prior

6   to the one examination he based his opinion on was a legitimate basis for that rejection).

7   Accordingly, the ALJ properly assigned little weight to both of these opinions.

8          Furthermore, the ALJ also did not err in giving little weight to Dr. Morris' opinion.  The

9   ALJ assigned little weight to Dr. Morris' opinion on the basis that none of the other evidence in

10   the record supported the limitations found by Dr. Morris.  This a proper reason for rejecting Dr.

11   Morris' opinion, see Tonapetyan, 242 F.3d at 1149, and a review of the record affirms the ALJ's

12   determination.  As noted above, the examination notes of Dr. Wong and Dr. Kalman did not

13   reveal that plaintiff suffered from any major limitations.  Furthermore, the rest of plaintiff's

14   records regarding her mental status, in particular plaintiff's record from the San Joaquin County

15   Behavioral Health Services, support the ALJ's determination.  (See e.g., AT 728-40 (chronicling

16   the improvement of plaintiff's depression and anxiety over time with medication and therapy

17   sessions).)  Accordingly, the ALJ gave specific and legitimate reasons for weighing the medical

18   evidence concerning plaintiff's mental impairments as he did.

19          For the foregoing reasons, the ALJ did not err in addressing the medical evidence as he

20   did in assessing plaintiff's RFC.

21                    3.   Whether the ALJ Made an Improper Credibility Determination With

22                         Respect to Plaintiff's Testimony

23          Plaintiff also argues that during the hearing the ALJ took her testimony out of context and

24   cut her off on a number of occasions and gives a number of examples where he did so.  (Pl.'s

25   Mot. for Summ. J. at 2.)  Ultimately, the ALJ determined that plaintiff's subjective complaints

26   lacked credibility.  Construed liberally, plaintiff's contentions regarding the ALJ's conduct during

27   the hearing appear to be in support of an argument that the ALJ improperly found plaintiff's

28   testimony to be not credible.  However, for the reasons stated below, this argument is without

merit.

A claimant's subjective statements and statements made by laypersons should be considered by the ALJ, but they need not always be accepted as true.  In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit summarized the ALJ's task in assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  [But t]he claimant … need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only be offering specific, clear and convincing reasons for doing so….

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).

However, "the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking…."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The "ALJ must … identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).)  In weighing a claimant's credibility, an ALJ may consider the claimant's reputation for truthfulness, inconsistencies in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).)  If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing.  Id. at 959.

////

17

Here, in determining that plaintiff's subjective complaints lacked credibility, the ALJ stated the following:

> The undersigned has considered the claimant's subjective complaints of pain and functional limitation. The claimant alleges a high level of chronic pain, and indicates that her activities of daily living are significantly limited due to her impairments. However, her allegations are inconsistent with the very conservative medical treatment the claimant has received, and with her own statements to Dr. Baker concerning her activities of daily living. Furthermore, the claimant's allegations of significant side effects of medication are not fully documented in the medical evidence of record. Surely if the claimant experienced significant side effects of medication, as she alleges, she would seek out medical advice. Considering the above factors, the undersigned finds the claimant's subjective complaints less than credible.

(AT 26 (internal citations omitted).)

The ALJ gave three specific, clear and convincing reasons for finding plaintiff's testimony not credible to the extent that plaintiff's statements concerned the intensity, persistence, and limiting effects of her symptoms. First, the ALJ reasoned that plaintiff's allegations were inconsistent with the conservative medical treatment he had received. An ALJ may use a claimant's favorable response to conservative treatment for impairments, and the pain associated with those impairments, as a reason for undermining the claimant's claims of disabling pain. See Tommasetti, 533 F.3d at 1040 (holding that the ALJ properly reasoned that plaintiff's favorable response to mild treatments, including physical therapy and anti-inflammatory medication, undermined his credibility with respect to his complaints about the disabling nature of his pain); Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). The record reflects that plaintiff's physicians prescribed conservative treatment to plaintiff including physical therapy and the use of medication and that plaintiff responded favorably to that treatment. (See, e.g., AT 301, 322 (creating a physical therapy plan for plaintiff's back problems including therapeutic exercise and body mechanics training); 527 (noting plaintiff was only prescribed sleeping medication to address her depression and PTSD); 578 (noting that plaintiff's back problems could "be managed conservatively" and that her radicular pain could "be controlled with infrequent epidural steroid injections"); 601 (noting that plaintiff was using Motrin and

1   Vicodin to treat her conditions).  Such recommendations of conservative treatment and plaintiff's

2   favorable response to that treatment undermine plaintiff's testimony as to the severity and

3   limiting effects of her impairments.

4          The ALJ's second reason for discounting plaintiff's testimony, that it was inconsistent

5   with her own statements to Dr. Baker concerning her activities of daily living, was also proper

6   and supported by the record.  During the August 29, 2009 examination, Plaintiff told Dr. Baker

7   that she was able to clean house with help, cook with help, do the laundry, go grocery shopping

8   with help, and walk one block albeit with pain.  (AT 567.)  She further stated that she could sit for

9   thirty minutes at a time, even though Dr. Baker noted that she sat for a longer period during her

10  interview with him, and shop for groceries for thirty minutes at a time.  (Id.)  Furthermore, she

11  did not describe to Dr. Baker any significant side effects from the medication she took for her

12  spinal issues.  (Id.)  While these statements suggest that plaintiff's impairments caused some

13  difficulty in her ability to engage in certain daily activities, they do not indicate that plaintiff's

14  impairments were as completely debilitating as plaintiff alleges.  See Molina v. Astrue, 674 F.3d

15  1104, 1113 (9th Cir. 2012) ("Even where those activities [of daily living] suggest some difficulty

16  functioning, they may be grounds for discrediting the claimant's testimony to the extent that they

17  contradict claims of a totally debilitating impairment.").

18         The ALJ's last reason for finding plaintiff not credible, that plaintiff's allegations of

19  significant side effects from her medications was not documented by the medical evidence in the

20  record were undermined by the fact that she did not seek medical advice, was also legitimate and

21  supported by the record.  See Tommasetti, 533 F.3d at 1039 ("The ALJ may consider many

22  factors in weighing a claimant's credibility, including . . . unexplained or inadequately explained

23  failure to seek treatment or to follow a prescribed course of treatment . . . .").  A review of the

24  medical evidence in the record generally fails to reflect that plaintiff suffered side effects from her

25  medications or made complaints that her medications caused any major complications.

26  Accordingly, the ALJ properly discounted plaintiff's subjective complaints on this basis as well.

27         For the foregoing reasons, the ALJ did not err in finding plaintiff's testimony concerning

28  the intensity, persistence, and limiting effects of her symptoms not credible.

1           4.   Whether Plaintiff's Submission of Additional Medical Evidence

2                Warrants Remand

3       Plaintiff stated in her motion for summary judgment that she would submit to the court

4 additional medical records that had not been presented to the ALJ. However, plaintiff did not file

5 these additional records with the court until she filed her "surreply" on September 24, 2013. (See

6 ECF No. 25.) As stated above, the court will disregard plaintiff's "surreply" as procedurally

7 improper and untimely. Nevertheless, for the reasons stated below, even if the court were to

8 consider these additional medical records remand to the ALJ is not warranted.

9       Under 42 U.S.C. § 405(g), "in determining whether to remand a case in light of new

10 evidence, the court examines both whether the new evidence is material to a disability

11 determination and whether a claimant has shown good cause for having failed to present the new

12 evidence to the ALJ earlier." Mayes v. Massanari, 276 F.3d 453, 461-62 (9th Cir. 2001). To be

13 material, "the new evidence must bear 'directly and substantially on the matter in dispute.'" Id .

14 at 462 (citation omitted). To demonstrate good cause, "the claimant must demonstrate that the

15 new evidence was unavailable earlier." Id. "If new information surfaces after the Secretary's

16 final decision and the claimant could not have obtained that evidence at the time of the

17 administrative proceeding, the good cause requirement is satisfied." Key v. Heckler, 754 F.2d

18 1545, 1551 (9th Cir. 1985) (citation omitted). In addition, the claimant must prove to the

19 reviewing court's satisfaction that there exists a "reasonable possibility that the new evidence

20 would have changed the outcome of the Secretary's determination had it been before him." Booz

21 v. Secretary of Health and Human Services, 734 F.2d 1378, 1380 (9th Cir. 1984).

22       Plaintiffs new evidence consists of a number of informational articles on plaintiff's

23 impairments and treatment records from: San Joaquin General Hospital dated May 23, 2007,

24 through October 11, 2010; San Joaquin County Behavioral Health Services dated December 17,

25 2009, through November 15, 2012; and Kaiser Permanente dated May 21, 2013.[10] (ECF No. 25

26 ───────────────────

27 [10] Plaintiff also attached two additional records to her earlier reply brief: a Kaiser Permenente printout documenting plaintiff's health conditions and past visit information and a letter dated July 30, 2013, from Dr. Liang of Kaiser Permenente to plaintiff recommending physical therapy

28 for plaintiff's back pain. (ECF No. 22 at 12-13, 15.) Neither of these documents concern

at 11-137.)  Plaintiff, however, does not give any reasons why the records dated prior to the

ALJ's June 25, 2010 decision were not presented to the ALJ during his review of plaintiff's case,

let alone a reason that constitutes "good cause" for purposes of 42 U.S.C. § 405(g).  See Mayes,

276 F.3d at 461-62.  Furthermore, plaintiff's new treating records documenting plaintiff's

condition after the ALJ's decision are, at most, material to a new application for disability, but

cannot be used as a basis to remand this case to the ALJ.  See Sanchez v. Sec'y of Health &

Human Servs., 812 F.2d 509, 512 (9th Cir. 1987) ("The new evidence indicates, at most, mental

deterioration after the hearing, which would be material to a new application, but not probative of

his condition at the hearing.").  Accordingly, even if the court were to consider plaintiff's newly

submitted medical records, plaintiff has made an insufficient showing that such records warrant

remand to the ALJ under 42 U.S.C. § 405(g).

V.     CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.

2.  The Commissioner's cross-motion for summary judgment (ECF No. 19) is

GRANTED.

3.  Judgment is entered for the Commissioner.

4.  The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

Dated:  March 31, 2014

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

plaintiff's treatment during the time period at issue in this case. See Sanchez, 812 F.2d at 512.
Moreover, a review of these documents does not reveal a "reasonable possibility that [they]
would have changed the outcome of the Secretary's determination had [they] been before him."
Booz, 734 F.2d at 1380.